UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————

LAMAR BIGSBY, JR., ET AL.,

                Plaintiffs,        14-cv-1398 (JGK)

     - against -           OPINION AND ORDER

BARCLAYS CAPITAL REAL ESTATE, INC.,
ET AL.,

                Defendants.
————————————————————————

JOHN G. KOELTL, District Judge:

    The plaintiffs, Lamar Bigsby, Jr. and Karla Freeland, bring this putative class action alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. ("RICO"), based on predicate acts of mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343, and related state law claims against defendant Barclays Capital Real Estate, Inc. ("Barclays") and various John Doe defendants.  The plaintiffs allege jurisdiction under RICO and the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA").

    The plaintiffs claim that Barclays, the servicer of the plaintiffs' home mortgage loans, engaged in two different schemes to overcharge borrowers fraudulently: (1) a "fee-shifting scheme," whereby Barclays allegedly charged borrowers for administrative and outsourcing fees that it concealed under the category "attorneys' fees," and (2) a "related mortgages

scheme," wherein Barclays allegedly inflated costs for borrowers with multiple mortgages.

Barclays now moves to dismiss the Amended Class Action Complaint for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), failure to state a claim, Fed R. Civ. P. 12(b)(6), and failure to state with particularity circumstances constituting fraud, Fed. R. Civ. P. 9(b).  For the reasons explained below, the defendant's motion is **granted in part and denied in part.**

**I.**

Rule 12(b)(1) of the Federal Rules of Civil Procedure is the mechanism for moving to dismiss a complaint for lack of subject matter jurisdiction.  "Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper 'when the district court lacks the statutory or constitutional power to adjudicate it.'"  Ford v. D.C. 37 Union Local 1549, 579 F.3d 187, 188 (2d Cir. 2009) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).  In considering a Rule 12(b)(1) motion, courts must construe all ambiguities and inferences in a plaintiff's favor.  However, a court may refer to evidence outside of the pleadings, and the burden is on the plaintiff to prove by a preponderance of the evidence that jurisdiction exists.  See Makarova, 201 F.3d at 113; see also Louis v. Comm'r

2

of Soc. Sec., No. 09cv4725 (JGK), 2010 WL 743939, at *1
(S.D.N.Y. Mar. 2, 2010).

In deciding a motion to dismiss pursuant to Rule 12(b)(6),
the allegations in the complaint are accepted as true, and all
reasonable inferences must be drawn in the plaintiff's favor.
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.
2007).  The Court's function on a motion to dismiss is "not to
weigh the evidence that might be presented at a trial but merely
to determine whether the complaint itself is legally
sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.
1985).  The Court should not dismiss the complaint if the
plaintiff has stated "enough facts to state a claim to relief
that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550
U.S. 544, 570 (2007).  "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009).  While the Court should construe the factual allegations
in the light most favorable to the plaintiff, "the tenet that a
court must accept as true all of the allegations contained in
the complaint is inapplicable to legal conclusions."  Id.  When
presented with a motion to dismiss pursuant to Rule 12(b)(6),
the Court may consider documents that are referenced in the

complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Kerik v. Tacopina, 64 F. Supp. 3d 542, 549-50 (S.D.N.Y. 2014).

**II.**

The following factual allegations are taken from the Amended Complaint and are accepted as true for purposes of this motion to dismiss.

The first named plaintiff, Lamar Bigsby, Jr., purchased property in Stockbridge, Georgia in August 2005 and obtained two mortgage loans from Fremont Investment & Loan Co. for $244,000 and $61,000, secured by his home.  HomEq Servicing ("HomEq") was the original servicer until it was acquired by Barclays in 2006. Amended Compl. ¶ 29. Barclays serviced the mortgages after November 2006.  Amended Compl. ¶¶ 51-52, 56.  Mortgage Electronic Registrations System ("MERS") served as the Nominee for the lender on the loan, and Bigsby signed standardized Fannie Mae and Freddie Mac form loan documents setting forth the terms and conditions of the loans.  Amended Compl. ¶¶ 51-53.  On January 1, 2007, Bigsby filed for bankruptcy protection after he became delinquent on his loans.  Amended Compl. ¶¶ 57-58.

4

After Bigsby filed for bankruptcy, he was assessed various fees and costs.  Bigsby alleges he was assessed "foreclosure fees and costs," "Bankruptcy Attorney Fees," a fee for a "breach letter," and late charges.  Amended Compl. ¶¶ 67-68.

The second named plaintiff, Karla Freeland, obtained two mortgages in 2004 and 2005 for a combined sum of over $500,000, secured by her Plymouth, Massachusetts home.  Amended Compl. ¶¶ 122-23.  MERS served as the Nominee for the lender on both loans, and Freeland signed standardized Fannie Mae and Freddie Mac loan documents setting forth the terms and conditions of the loans.  Amended Compl. ¶¶ 122-24.  At some point, Barclays became the servicer of those loans.  Amended Compl. ¶ 128.  In or about 2006, Freeland became delinquent on her loans and filed for bankruptcy in 2006.  Amended Compl. ¶¶ 129, 134-35.

From 2006 through 2008, Freeland was charged by Barclays for attorney fees and other fees that the plaintiffs claim were improper, including post-acceleration late fees.[1]  Amended Compl. ¶¶ 138, 140 and 141, 142, 147.  During the course of Freeland's

---

[1] "Acceleration" of a loan occurs under an "acceleration clause," which is a "loan-agreement provision that requires the debtor to pay off the balance sooner than the due date if some specified event occurs, such as failure to pay an installment or to maintain insurance."  "acceleration clause," Black's Law Dictionary (10th ed. 2014); see also In re AMR Corp., 730 F.3d 88, 99 n.13 (2d Cir. 2013).

bankruptcy, and continuing until the first part of 2013, Feeland paid off the amounts that were allegedly owed before she had filed for bankruptcy, including the attorneys' fees, post-acceleration late fees, and other unpaid fees.  Amended Compl. ¶ 163; see also Amended Compl. ¶¶ 145, 157.

The loan documents for the loans to Bigsby and Freedland allegedly contained a provision that provided for "the charging of certain costs and expenses should the loan, after default, become accelerated by the Note Holder to the extent that such costs and expense[s] were not prohibited by applicable law." Amended Compl. ¶¶ 54, 125.  The documents allegedly did not contain "any statement which permitted a late charge for a monthly payment obligation once the Loan had been accelerated and its full amount deemed immediately due and owing."  Amended Compl. ¶¶ 55. 126.

### A.

The Amended Complaint alleges that Barclays, the note holders, Fidelity, Deutsche Bank National Trust Co., and various law firms hired by Fidelity to represent Barclays (whom the plaintiffs refer to collectively as "the Network Law Firms") entered into what the Amended Complaint characterizes as a "fee-shifting scheme."  As part of this scheme and pursuant to a Master Service Agreement, Fidelity and other "outsourcers" acted

as intermediaries between Barclays and law firms that handled
bankruptcy and foreclosure proceedings.  Amended Compl. ¶¶ 30-
31, 35-37.  The plaintiffs allege that the outsourcers were
compensated by Barclays, in part, out of the attorneys' fees
charged by Barclays to borrowers ostensibly for the legal
services rendered by the law firms in the bankruptcy and
foreclosure proceedings.  Amended Compl. ¶¶ 42-43.  The
plaintiffs allege that this splitting of the attorneys' fees
with non-lawyers was not disclosed by Barclays to the borrowers.

The plaintiffs allege that Barclays did not directly pay
Fidelity for any of these services. Instead, retainer agreements
between Fidelity and the Network Law Firms allegedly directed
how much in "attorneys' fees" the Network Law Firms were to
charge Barclays for each specific task in bankruptcy and
foreclosure, and how much of that "attorney's fee" would then be
divided with Fidelity.  Amended Compl. ¶¶ 174-75.

The plaintiffs allege that Barclays was aware that Fidelity
and the Network Law Firms split the fees paid by Barclays for
purported "legal services."  Nevertheless, the plaintiffs allege
Fidelity and Barclays jointly concealed the entire amount
charged under a transaction code for "Attorneys' Fees,"
concealing the "administrative", "technology" and "outsourcing"
fees paid to Fidelity.  Between 2006 and 2010, Barclays,

Fidelity, and the Network Law Firms allegedly charged borrowers hundreds of thousands of dollars in "administrative", "technology" and/or "outsourcing" fees on Barclays-serviced loans by labeling them "attorneys' fees."  Amended Compl. ¶¶ 175-178.

The plaintiffs also allege that these legal fees were improper in that they supposedly violated the State Bar of Georgia's Rule of Professional Conduct on fee-sharing arrangement.[2]  Amended Compl. ¶¶ 66, 69, 80, 84.

**B.**

The Amended Complaint also alleges that Barclays, its note-holding clients, the Network Law Firms and the MERS entered into what the Amended Complaint calls the "related mortgages scheme." This scheme came into play when the borrower had taken out both a first and second mortgage with the same entity, and where a subsequent foreclosure or bankruptcy occurred.

Under this alleged scheme, the plaintiffs' first and second lien loans were allegedly owned by the same entity, but separate counsel was retained and separate fees incurred for both loans

---

[2] Rule 5.4 provides that, "A lawyer or law firm shall not share legal fees with a nonlawyer" and "A lawyer shall not permit a person who recommends, employs, or pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services."  Ga. Rule of Prof. Conduct § 5.4.

during the plaintiffs' bankruptcy proceedings.  As a result, the plaintiffs were allegedly charged duplicative fees and costs for both loans.  The plaintiffs allege that this arrangement was also hidden from the plaintiffs, the bankruptcy trustee, and the bankruptcy courts.  Amended Compl. ¶¶ 180-81.

### C.

The plaintiffs filed a putative class action complaint in March 2014 and an Amended Complaint in February 2015.  The Amended Complaint alleges substantive violations of RICO under 18 U.S.C. § 1962(c), RICO conspiracy under § 1962(d), and state law claims for breach of contract, unjust enrichment, and conversion.  It also seeks the imposition of a constructive trust and an accounting.

Following a pre-motion conference, the Court provided the plaintiffs the opportunity to file a Second Amended Complaint by March 27, 2015.  The plaintiffs chose not to file a Second Amended Complaint.  The defendants now move to dismiss.  The defendants argue that the Amended Complaint fails to state a RICO claim or plead an underlying predicate act, fails to allege a RICO conspiracy in the absence of a valid RICO claim, and that the plaintiffs' state law claims must be dismissed in the absence of a valid federal claim.

## III.

## A.

The RICO statute provides in relevant part: "It shall be unlawful for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  18 U.S.C. § 1962(c).

To state a claim under § 1962(c), a plaintiff must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly . . . participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce."  Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983); see R.C.M. Exec. Gallery Corp. v. Rols Capital Co., 901 F. Supp. 630, 639 (S.D.N.Y. 1995); see also Fisher v. Offerman & Co., No. 95cv2566 (JGK), 1996 WL 563141, at *2 (S.D.N.Y. Oct. 2, 1996).  To establish a pattern of racketeering activity, a "plaintiff must plead at least two predicate acts, and must show that the predicate acts are related and that they amount to, or pose a threat of, continuing criminal activity." GICC Capital Corp. v. Tech. Fin. Grp., 67 F.3d 463, 465 (2d Cir. 1995) (internal citation omitted).

Where, as here, "'a plaintiff in a RICO claim alleges racketeering activity based on the predicate acts of violating the mail or wire fraud statutes, he or she must prove three elements: (1) scheme to defraud, including proof of intent; (2) money or property as object of scheme; (3) use of mails or wires to further the scheme.'" 4 K&D Corp. v. Concierge Auctions, LLC, 2 F. Supp. 3d 525, 539 (S.D.N.Y. 2014) (quoting City of N.Y. v. Cyco.Net, Inc., 383 F.Supp.2d 526, 552 (S.D.N.Y. 2005).

Courts have repeatedly warned against attempts by plaintiffs "'to mold their claims to the RICO form even though their injuries do not fall within those intended to be addressed by the Act.'" Lefkowitz v. Reissman, No. 12cv8703 (RA), 2014 WL 925410, at *4 (S.D.N.Y. Mar. 7, 2014) (quoting Rosenson v. Mordowitz, No. 11cv6145 (JPO), 2012 WL 3631308, at *5 (S.D.N.Y. Aug.23, 2012)).  The alleged predicate acts of mail and wire fraud "'merit particular scrutiny,'" id. (quoting Cohen v. Cohen, No. 09cv10230 (WHP), 2014 WL 279555, at *5 (S.D.N.Y. Jan. 27, 2014)), lest the courts allow the RICO statute "to federalize garden-variety state common law claims," id. (quoting Gross v. Waywell, 628 F. Supp. 2d 475, 483 (S.D.N.Y. 2009)).

A plaintiff pleading RICO predicate acts sounding in fraud must also satisfy Federal Rule of Civil Procedure 9(b) which requires that the complaint "'specify the statements it claims

were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'" 4 K&D Corp., 2 F. Supp. 3d at 537-38 (quoting Moore v. PaineWebber, Inc., 189 F.3d 165, 173 (2d Cir. 1999)).

The statement upon which the fraud claim is predicated must be more than a false promise to fulfill the terms of the agreement. See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 19-20 (2d Cir. 1996). A plaintiff asserting fraud based on a counterparty's allegedly false promise to perform must "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." Id. at 20 (internal citations omitted).

With regard to the "fee-shifting" scheme, the plaintiffs allege that the defendants used the mails and wires to send monthly account statements, delinquency letters, legal papers, and similar documents to borrowers "which fraudulently identified the portion of the fees divided with the outsourcers as attorneys' fees" even though many of those charges were not

for attorneys.  Amended Compl. ¶ 197, 200.  The Amended
Complaint also alleges that "other documents relating to the
fee-splitting scheme were sent through the U.S. mails . . . and
over U.S. wires" by Fidelity, Barclays, the noteholders, and the
Network Law firms, among others.  Amended Compl. ¶ 198, 200.

Taking the plaintiffs' allegations as true for purposes
only of the motion to dismiss, the defendants' conduct amounts
at most to a breach of contract.  The defendants allegedly
listed fees as "attorneys' fees" when they should have been
listed separately as "administrative", "technology" and/or
"outsourcing" fees, and the defendants thereby charged for
services that they were not entitled to charge for under the
contract.  See Amended Compl. ¶¶ 54, 55 125, 126.  The gist of
the plaintiffs' Amended Complaint is that the attorneys' fees
that were charged to borrowers were shared with Fidelity and
other outsourcers and that a portion of the attorneys' fees was
inappropriately charged under the loan agreements.

These allegations do not amount to a separate claim of
fraud.  The defendants did not owe the plaintiffs some legal
duty beyond the obligations contained within the contracts, and
the defendants made no misrepresentation "collateral or
extraneous to the contract."  See Lefkowitz, 2014 WL 92541, at
*5.

13

In support of their contrary position, the plaintiffs cite Merrill Lynch & Co. v. Allegheny Energy, Inc., 500 F.3d 171 (2d Cir. 2007).  In that case, which did not involve a RICO allegation, the Court of Appeals for the Second Circuit held that the plaintiff's claim based on fraudulent inducement of a contract was separate and distinct from a breach of contract claim under New York law.  But there, the seller misrepresented facts as to the present condition of the property in question, which amounted to fraudulent inducement to enter into the contract.  Id. at 183-84.  There is no allegation of fraudulent inducement in this case.  Furthermore, in this case, the plaintiffs do not allege common law fraud claims independent of their RICO claims; their only state law claims are for breach of contract and related harms.  See MashreqBank, psc v. ING Grp. N.V., No. 13cv2318 (LGS), 2013 WL 5780824, at *5 (S.D.N.Y. Oct. 25, 2013) ("A claim for fraud cannot survive where it arises out of the identical facts and circumstances, and even contains the same allegations, as the cause of action alleging breach of contract.").

No collateral or extraneous misrepresentation exists here. The plaintiffs attempt to create one by pointing to a Georgia ethics rule that prohibits the sharing of legal fees between lawyers and non-lawyers.  See Amended Compl. ¶ 47.  For support,

14

the plaintiffs cite the Court's decision in <u>Mazzei v. Money Store</u>, 288 F.R.D. 45 (S.D.N.Y. 2012).  But in that case, the plaintiffs plainly were not contending that there was an independent cause of action that could be asserted based on the ethics rules.  Rather, they contended that the sharing of attorneys' fees with non-lawyers was a breach of contract.  <u>See id.</u> at 65.  State ethics rules do not create the basis for a separate claim.  <u>See Schatz v. Rosenberg</u>, 943 F.2d 485, 492 (4th Cir. 1991) ("[E]thical rules were intended by their drafters to regulate the conduct of the profession, not to create actionable duties in favor of third parties.")  <u>Mazzei</u> provides no support for the plaintiffs' fraud allegations.

The plaintiffs' mail and wire fraud allegations "are nothing more than breach of contract claims, and therefore do not constitute predicate acts."  <u>Lefkowitz</u>, 2014 WL 92541, at *3; <u>see Goldfine v. Sichenzia</u>, 118 F. Supp. 2d 392, 404-05 (S.D.N.Y. 2000) (dismissing RICO mail fraud claims that were duplicative of breach of contract claims); <u>see also MashreqBank</u>, 2013 WL 5780824, at *5-6 (dismissing fraud claims that did not allege misrepresentations collateral or extraneous to the contracts).

With respect to the "related mortgages" scheme, the allegations must be dismissed for a different reason.  The "fee-

15

shifting" allegations, while insufficient to state a claim, pointed to specific statements that were allegedly false or misleading to satisfy Rule 9(b).  The same cannot be said of the allegedly fraudulent statements regarding the "related mortgages scheme."  The Amended Complaint fails to plead specific statements that were allegedly fraudulent and fails to "state when and where the statements were made, and identify those responsible for the statements."  4 K & D Corp., 2 F. Supp. 3d at 538 (internal quotation marks and citation omitted).

The Amended Complaint merely references general statements that were allegedly fraudulent, without providing the kind of specific information required by Rule 9(b).  For example, the Amended Complaint includes general statements, such as: "[W]hen the borrower had taken out both a first and second mortgage, Barclays, its noteholder clients and the Network Law Firms would identify the second mortgage holder as unrelated to the first mortgage holder even if they were owned by the same entity." Amended Compl. ¶ 180; "In bankruptcy, though the holders of the first and second mortgages were related or the same entity, that was concealed from the debtor, the Trustee, and the bankruptcy courts."  Amended Compl. ¶ 182; "Bigsby and other borrowers relied on the representation that the first and second mortgage holders were independent of each other, paying legal fees and

expenses . . . [which were] either redundant or entirely
unnecessary."  Amended Compl. ¶ 183.

To state a claim, the plaintiffs must allege that there
were specific misrepresentations that the two lenders were not
related when in fact they were, but the Amended Complaint
contains no specific representations to that effect.  The
plaintiffs must also allege when and where the
misrepresentations were made and who made them.  Without such
representations, the allegation comes down to a grievance that
it was unnecessary and redundant for the defendants to hire more
than one law firm.  Such a criticism does "not rise to the
requisite level of particularity" to state a claim.
Petrosurance, Inc. v. Nat'l Ass'n of Ins. Comm'rs, 888 F. Supp.
2d 491, 504 (S.D.N.Y. 2012), aff'd, 514 F. App'x 51 (2d Cir.
2013); see also Eastchester Rehab. & Health Care Ctr., LLC v.
Eastchester Health Care Ctr., LLC, No. 03cv7786 (LTS)(FM), 2005
WL 887154, at *4 (S.D.N.Y. Apr. 15, 2005) (holding plaintiffs
failed to plead alleged false filings fraud scheme with
sufficient particularity to survive motion to dismiss).

Moreover, the plaintiffs have failed to plead scienter, a
necessary element of fraud, with respect to either alleged
fraudulent scheme.

At the pleading stage, "[i]n order to establish scienter for [a] fraud claim, the plaintiffs must either (1) identify circumstances indicating conscious or reckless behavior by the defendants, or (2) allege facts showing a motive for committing fraud and a clear opportunity for doing so." San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., 75 F.3d 801, 813 (2d Cir. 1996).  "While malice or intent may be averred generally, this is not a 'license to base claims of fraud on speculation and conclusory allegations.'  Rather, Plaintiff must allege facts that give rise to a strong inference of fraudulent intent." Stanley v. OptumInsight, Inc., No. 1:13cv00944, 2014 WL 906145, at *6 (N.D.N.Y. Mar. 7, 2014) (quoting Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co., 375 F.3d 168, 187 (2d Cir. 2004)).

Here, the plaintiffs allege that the defendants' motive was to profit financially from their false representations.  The plaintiffs proffer no evidence of who specifically in Barclays stood to benefit from the alleged schemes.  The Amended Complaint speaks vaguely of the corporate entity itself and how it sought to reduce overhead costs.  See, e.g., Amended Compl. ¶ 173.  If a mere allegation of corporate profit were sufficient to allege scienter, the requirement would be effectively eliminated.

18

In the corporate context, "[s]ufficient motive allegations 'entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged.' Motives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from the fraud." Kalnit v. Eichler, 264 F.3d 131, 139 (2d Cir. 2001) (quoting Novak v. Kasaks, 216 F.3d 300, 307 (2d Cir. 2000)).  The Court of Appeals for the Second Circuit has held that insufficient motives can include, among others, "(1) the desire for the corporation to appear profitable and (2) the desire to keep stock prices high to increase officer compensation."  Id.

The allegation of mere financial gain on behalf of unspecified individuals is insufficient to show a motive for committing fraud under Rule 9(b).  See Morris v. Fordham Univ., No. 03cv0556 (CBM), 2004 WL 906248, at *5 (S.D.N.Y. Apr. 28, 2004) (dismissing complaint where plaintiff "neither allege[d] facts to show that defendant had both motive and opportunity to commit fraud nor . . . allege[d] facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness"); Harrell v. Primedia, Inc., No. 02cv2893 (JSM), 2003 WL 21804840, at *3 (S.D.N.Y. Aug. 6, 2003) ("The mere fact

that Defendants had a desire to see the company succeed does not provide a motive to engage in serious fraud."); see also San Leandro, 75 F.3d at 814.

Similarly, the Complaint fails to allege facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.  The essence of the fee-shifting allegations is that law firms billed Barclay's for attorneys' fees that were charged to mortgagors, but a portion of those fees were paid to outsourcers for administrative, technology, and overhead fees.  Amended Compl. ¶¶ 175-78.  What is missing from the Amended Complaint are specific, non-conclusory allegations that Barclay's knew that the charges were impermissible at the time they were billed.  Likewise, the plaintiffs point to no specific, non-conclusory allegations that Barclay's knew that the charges for separate attorneys for more than one loan were improper.

The insufficient allegations of fraud as to the "fee-shifting" and "related mortgages" schemes doom the plaintiffs' substantive RICO claim.  Accordingly, the plaintiffs' RICO conspiracy claim under 18 U.S.C. § 1962(d) must also fail.  See Allen v. New World Coffee, Inc., No. 00cv2610, 2002 WL 432685, at *6 (S.D.N.Y. March 19, 2002) ("Any claim under § 1962(d) based on conspiracy to violate the other subsections of section

1962 must fail if the substantive claims are themselves deficient.").

It is unnecessary to reach the additional arguments raised by the defendants in support of their motion to dismiss the RICO claims.

**B.**

The defendants argue that in the absence of the federal RICO claims, the plaintiffs' state law claims must be dismissed for lack of subject-matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). The plaintiffs counter that the Court maintains subject matter jurisdiction, irrespective of the RICO claims, pursuant to CAFA. See 28 U.S.C. § 1332(d)(2)(A), (5)(B), (6).

"To establish federal jurisdiction under CAFA, [plaintiffs] 'must prove to a reasonable probability' that (1) there is minimal diversity (meaning at least one defendant and one member of the putative class are citizens of different states); (2) the putative class exceeds 100 people; and (3) the amount in controversy is greater than $5 million.'" Fields v. Sony Corp. of Am., No. 13cv6520 (GBD), 2014 WL 3877431, at *1 (S.D.N.Y. Aug. 4, 2014) (quoting Blockbuster, Inc. v. Galeno, 472 F.3d 53, 59 (2d Cir. 2006)).

The defendants argue that the plaintiffs cannot satisfy CAFA's amount-in-controversy requirement. A court evaluates the

jurisdictional facts, including the amount in controversy, on the basis of the pleadings.  See id. at *2.  "'Where the pleadings themselves are inconclusive as to the amount in controversy, however, federal courts may look outside those pleadings to other evidence in the record.'"  Orlander v. Staples, Inc., No. 13cv703 (NRB), 2013 WL 5863544, at *2 (S.D.N.Y. Oct. 31, 2013) (quoting United Food & Commercial Workers Union, Local 919 v. Centermark Props. Meriden Square, 30 F.3d 298, 305 (2d Cir. 1994)).  "The Court 'constru[es] all ambiguities and draw[s] all inferences' in plaintiff's favor." Id. (quoting Aurecchione v. Schoolman Transp. Sys., 426 F.3d 635, 638 (2d Cir. 2005) (alterations in original).  When assessing the jurisdictional amount, the Court considers the plaintiffs' allegations, not the likelihood of recovery.  Id. (citing Zacharia v. Harbor Island Spa, Inc., 684 F.2d 199, 202 (2d Cir. 1982)).

While the plaintiffs here did not allege a specific damages amount, that is not fatal to their jurisdictional claim.  See Fields, 2014 WL 3877431, at *2.  The proposed class consists of allegedly thousands of borrowers of residential loans originated or serviced by Barclays who were charged post-acceleration late fees and split attorney fees over a multi-year period.  See Amended Compl. ¶¶ 19-22.  The Amended Complaint points to

representations that HomEq made in an earlier federal lawsuit that, from February 2001 through July 2005, it referred over 46,000 loans to Fidelity in connection with bankruptcy or foreclosure. Amended Compl. ¶ 48. The Amended Complaint also incorporates by reference a public Form 8-K SEC filing in which Barclays, identified as the "New HomEq," acquired a portfolio of loans and that more than 19,000 loans were already in foreclosure and bankruptcy as of June 30, 2006. Amended Compl. ¶ 50. The Court may consider such a document. See, e.g., Chambers, 282 F.3d at 153. This evidence gives rise to the reasonable probability that tens of thousands of loans were serviced during the class period. See Amended Compl. ¶¶ 48, 50. Each of the plaintiffs allegedly paid substantial improper fees. Amended Compl. ¶¶ 66, 69, 70, 80, 138, 145, 148, 149.

Accordingly, taken together, plaintiffs' allegations are sufficient to create a presumption that the amount-in-controversy requirement is satisfied. See, e.g., Fields, 2014 WL 3877431, at *3.

Aside from the jurisdictional amount argument, the defendants do not contest that the Court has jurisdiction under CAFA to consider the plaintiffs' state law claims. The motion to dismiss the plaintiffs' state law claims for lack of subject matter jurisdiction is, therefore, denied.

**CONCLUSION**

The Court has considered all of the arguments raised by the parties.  To the extent not specifically addressed, the arguments are either moot or without merit.  For the foregoing reasons, the defendants' motion to dismiss is **granted in part and denied in part.**  The substantive RICO claim and the RICO conspiracy claim are dismissed.  The defendants' motion to dismiss is **denied** with regard to the plaintiffs' state-law claims (Counts III-VII).  The Clerk is directed to close ECF Docket No. 26.

**SO ORDERED.**

**Dated:      New York, New York**
**            March 16, 2016**                        _____/s/_____
                                                            **John G. Koeltl**
                                                    **United States District Judge**

24