USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/25/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Bigsby et al.,

                      Plaintiffs,

-against-

Barclays Capital Real Estate, Inc.,

                      Defendant.

1:14-cv-01398 (JGK) (SDA)

OPINION AND ORDER

**STEWART D. AARON, United States Magistrate Judge:**

Before the Court is a dispute between the parties regarding the scope of a deposition notice (the "Notice") served by Plaintiffs' counsel, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. (*See* 1/17/19 Joint Ltr., ECF No. 173.) In their Notice, Plaintiffs seek testimony from one or more corporate representatives of Defendant, Barclays Capital Real Estate, Inc. ("BCREI"), regarding ten identified topics (*see* Notice, ECF No. 173-1, at 3-6), only certain of which are disputed.[1] The Court's rulings with respect to the disputed topics are set forth below.

## BACKGROUND[2]

Plaintiffs are mortgagors who filed this putative class action against BCREI, in its capacity as successor to a mortgage-servicing company known as HomEq Servicing Corp. ("HomEq"). HomEq collected on home loans on behalf of mortgage-note holders, who were typically trustees

---

[1] In the January 17, 2019 joint letter to the Court, BCREI objects to three topics in addition to the ones addressed in this Opinion and Order. (1/17/19 Joint Ltr. at 3.) However, the parties resolved their disputes regarding such topics without the need for Court intervention. (*See* 1/23/19 Joint Ltr., ECF No. 182.)

[2] The first two paragraphs of this Background Section are drawn from allegations contained in Plaintiffs' Second Amended Complaint ("SAC"). (SAC, ECF No. 104, ¶¶ 2, 16-17, 26-28, 31, 33-47, 48-49, 53, 57, 59, 122-23, 206-08, 225-27, 243-45.)

and beneficiaries of securitized loans. BCREI acquired HomEq in 2006. After acquiring HomEq, BCREI continued to operate HomEq using the same employees, guidelines and business strategies as those used by HomEq. HomEq and BCREI serviced note holders' loans pursuant to a Pooling and Servicing Agreement ("PSA"). Under the PSA, a note holder assigned to HomEq and BCREI certain ownership rights of the note, including the right to foreclose on delinquent mortgages.

Each plaintiff obtained at least one mortgage serviced by HomEq and BCREI. All the Plaintiffs went into default on their mortgage obligations, and BCREI instituted foreclosure proceedings against them. Fidelity National Foreclosure Solutions and its successors and related entities (collectively, "Fidelity") provided bankruptcy and foreclosure services to HomEq and BCREI. Fidelity served as the intermediary between the bankruptcy and foreclosure counsel hired by Fidelity, and HomEq and BCREI. Plaintiffs allege that BCREI engaged in an illegal scheme with Fidelity to shift certain expenses to Plaintiffs, including attorneys' fees.

Prior motion practice resulted in the dismissal of several claims. Plaintiffs' remaining claims, which relate to fees charged to Plaintiffs, are claims for breach of contract, unjust enrichment and conversion, as well as claims under the California Unfair Competition Law ("UCL") arising out of the alleged fee-shifting scheme. (*See* 3/28/18 Op. & Order, ECF No. 129, at 40; 6/29/18 Order, ECF No. 143.)

The parties' present disputes relate to the following topics contained in the Notice:

> **Topic 4(h)(iii)**: The operation, functionality and capabilities of the principal accounting systems ("the Accounting Systems") used by HomEq in servicing loans, including the MSP system and IT Turbo relating to the following areas[:] . . . The use and identity of codes used by HomEq in the Accounting Systems relating to . . . (iii) the charging-off, reversal, adjustment or waiver of fees and expenses posted to accounts. (Notice, Topic 4(h)(iii).)

2

> **Topic 6**: The agreements between Fidelity and HomEq relating to the provision of default, foreclosure, bankruptcy and eviction services provided by Fidelity, attorneys, trustees and other parties, including: (i) the negotiation of the fee schedules and indemnity provisions in the agreements . . . .. (Notice, Topic 6.)
>
> **Topic 9**: Communications among Barclays employees, between Barclays and Fidelity, or between Barclays and any related-entity concerning contractual provisions such as the one in the April 9, 2009 agreement between Barclays and Fidelity titled "Default Statement of Work" requiring indemnifying Barclays if the Fidelity business model is alleged to be "unlawful or improper" or "constitutes an impermissible 'fee splitting' or 'referral fee' arrangement." (Notice, Topic 9.)

Oral argument was held by telephone on January 25, 2019.

## **LEGAL STANDARDS**

Rule 30(b)(6) of the Federal Rules of Civil Procedure provides in relevant part:

> In its notice . . . a party may name as the deponent a public or private corporation . . . and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. . . . The persons designated must testify about information known or reasonably available to the organization.

Fed. R. Civ. P. 30(b)(6).

"Under Rule 30(b)(6), when a party seeking to depose a corporation announces the subject matter of the proposed deposition, the corporation must produce someone familiar with that subject." *Reilly v. NatWest Markets Grp., Inc.*, 181 F.3d 253, 268 (2d Cir. 1999). "To satisfy Rule 30(b)(6), the corporate deponent has an affirmative duty to make available 'such number of persons as will' be able 'to give complete, knowledgeable and binding answers' on its behalf." *Id*. (citation omitted). Thus, if witnesses designated

3

pursuant to Rule 30(b)(6) lack "personal knowledge concerning the matters set out in the deposition notice," then "the corporation is obligated to prepare them so that they may give knowledgeable answers." *Spanski Enters., Inc. v. Telewizja Polska, S.A.*, No. 07-CV-00930, 2009 WL 3270794, at *3 (S.D.N.Y. Oct. 13, 2009).

The organization "must make a conscientious good faith endeavor to designate the persons having knowledge of the matters [identified] . . . and to prepare those persons in order that they can answer fully, completely, [and] unevasively, the questions posed . . . as to the relevant subject matters." *Eid v. Koninklijke Luchtvaart Maatschappij N.V.*, 310 F.R.D. 226, 228 (S.D.N.Y. 2015) (citation omitted). The organization "must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135, 151 (S.D.N.Y. 1997).

If the entity receiving the deposition notice does not possess knowledge of the matters listed in the deposition notice, "then its obligations under Rule 30(b)(6) obviously cease, since the rule requires testimony only as to 'matters known or reasonably available to the organization.'" *Dravo Corp. v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 76 (D. Neb. 1995) (citing Fed. R. Civ. P. 30(b)(6)).

The deposition topics must be "relevant to any party's claim or defense." *See* Fed. R. Civ. P. 26(b)(1). "Like other forms of discovery, a Rule 30(b)(6) deposition notice is subject to the limitations under Federal Rule 26—deposition topics should be proportional to the needs of the case, not unduly burdensome or duplicative, and described with 'reasonable particularity.'" *Blackrock Allocation Target Shares: Series S*

4

*Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14-CV-09371 (KPF) (SN), 2017 WL 9400671, at *1 (S.D.N.Y. Apr. 27, 2017) (citations omitted).

## APPLICATION

I. **Testimony Regarding Accounting Systems**

Topic 4(h)(iii) seeks testimony on the use of various codes in the accounting system used by BCREI in servicing HomEq loans, *i.e.*, codes relating to "the charging-off, reversal, adjustment or waiver of fees and expenses posted to accounts." (Notice at 5.) BCREI objects to this topic based upon its representation to the Court that "[t]here are *thousands* of codes that were used in the accounting systems at issue," and asks the Court to limit this topic to "the codes that actually appear on [Plaintiffs'] account transcripts." (1/17/19 Joint Ltr. at 3 (emphasis in original).)[3] The Court finds in its discretion that using Topic 4(h)(iii) as written would not be proportional to the needs of the case. Thus, the Court amends this topic to require testimony with respect to accounting system codes that actually appear on Plaintiffs' account transcripts.

II. **Testimony Regarding BCREI's Negotiation Of Attorney Fee Schedules**

Topic 6(i) seeks, in part, testimony concerning the "negotiation of the fee schedules" that appear in certain agreements between BCREI and Fidelity. (Notice at 5.) BCREI objects to this topic on the ground that it "has no relevance to the case and [that] it would be unduly burdensome to require BCREI to prepare a witness to testify on this issue." (1/17/19 Joint Ltr. at 1.) BCREI observes that the fee schedules were negotiated as part of the HomEq business that BCREI sold in 2010, and that none of the HomEq employees who were involved in the

---

[3] Plaintiffs' counsel argues that there are only a few relevant codes, not thousands. (1/17/19 Joint Ltr. at 5.) However, the Court credits BCREI's representation that it would be required to sift through thousands of codes if Topic 4(h)(iii) is not amended.

5

negotiations currently is employed by BCREI. (*Id*. at 2.) In response, Plaintiffs argue that "one of [their] central claims involves allegations that [BCREI] routinely charged borrowers for purported 'attorney's fees' from which an 'administrative' or 'referral' fee was secretly shared with Fidelity." (*Id*. at 4.) Plaintiffs also identify John Dunnery, a former BCREI executive, as a person with knowledge on this topic. (*Id*.)

The Court in its discretion finds that the negotiation of attorney fee schedules is relevant at least to Plaintiffs' remaining UCL claim. (*See* 6/27/18 Tr., ECF No. 147, at 40-42.) The Court also finds that the discovery sought on Topic 6(i) is proportional to the needs of the case. BCREI shall make a conscientious good faith effort to prepare a designated witness to testify regarding negotiation of the fee schedules that appear in the identified agreements between BCREI and Fidelity, including by referring such witness to documents within the possession, custody or control of BCREI; by having the witness interview past employees of BCREI; and/or by referring the witness to other reasonably available sources.

### III.     Testimony Regarding Indemnity Provisions In Fidelity Agreements

Topic 9 seeks testimony concerning "[c]ommunications among [BCREI] employees, between [BCREI] and Fidelity, or between [BCREI] and any related entity" concerning a certain provision in a BCREI agreement with Fidelity, in which Fidelity agreed to indemnify BCREI if its business model were alleged to be "unlawful or improper" or to constitute "improper 'fee splitting.'" (Notice at 6.) Topic 6(i) similarly seeks testimony concerning the "negotiation of . . . indemnity provisions" in BCREI's agreements with Fidelity. (*Id*. at 5.) BCREI argues that these topics are not relevant to Plaintiffs' pending claims, but relate to a fraud claim which already has been dismissed. (1/17/19 Joint Ltr. at 2.) In response, Plaintiffs assert that in prior filings in this

lawsuit, BCREI "represented that the indemnity provision was added to the Fidelity agreement based on the allegations made in [another lawsuit], and not because [BCREI] was aware that the payment arrangement might be illegal." (*Id*. at 5 (emphasis omitted).)

In the SAC, Plaintiffs plead as evidence of BCREI's fraud the indemnity provision contained in one of the Fidelity agreements. (*See* SAC ¶ 268.) And, as noted, the fraud claim already has been dismissed. Plaintiffs seem to argue that the indemnity provision is evidence that BCREI knew that its fee splitting was unlawful. Plaintiffs assert that BCREI "placed its knowledge of potential wrongdoing in issue by raising the affirmative defense of good faith." (1/17/19 Joint Ltr. at 5.) However, during oral argument, counsel for BCREI represented to the Court that it was withdrawing its good faith defense. Thus, the Court finds that testimony regarding negotiation of the indemnity provisions is not relevant.

In any event, even if the Court were to find some marginal relevance of such testimony, it would not be sufficiently important in resolving the remaining issues in this case, and the burden and expense of such discovery would outweigh its likely benefit. Thus, BCREI need not designate a witness to testify regarding indemnity provisions in the Fidelity agreements, although it may choose to do so. If BCREI declines to designate a witness on this topic, it may not introduce at trial evidence regarding the indemnity provisions, including evidence regarding the reasons why it added the indemnity provisions to the Fidelity agreements. *See* Fed. R. Civ. P. 37(c)(1).

## CONCLUSION

For the foregoing reasons, BCREI shall designate a witness or witnesses to testify regarding Topic 4(h)(iii), as revised; and Topic 6(i) (regarding BCREI's negotiation of attorney fee schedules).

**SO ORDERED.**

DATED: New York, New York
January 25, 2019

_____
STEWART D. AARON
United States Magistrate Judge