UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: ___7-20-19___

LAMAR BIGSBY, JR., KARLA FREELAND,
MARIA BRANDT, KATHLEEN MURRY, and
HERMAN GRIMES, on behalf of
themselves and all others similarly
situated,

                    Plaintiffs,

          - against -

BARCLAYS CAPITAL REAL ESTATE, INC.,
doing business as HOMEQ SERVICING,

                    Defendant.

14-cv-1398 (JGK)

OPINION & ORDER

JOHN G. KOELTL, District Judge:

     This case was originally filed by plaintiffs Lamar Bigsby,
Jr., and Karla Freeland more than five years ago against the
defendant, Barclays Capital Real Estate, Inc., in its capacity
as successor to a mortgage-servicing company known as HomEq
Servicing Corp. The plaintiffs alleged that the defendant
defrauded mortgagors in the assessment of foreclosure-related
fees, giving rise to claims under the Racketeer Influenced and
Corrupt Organizations Act ("RICO") and related common law
claims. The defendant filed a motion to dismiss, and the Court
granted the motion in part and dismissed the plaintiffs' RICO
claims. See Bigsby v. Barclays Capital Real Estate, Inc., 170 F.
Supp. 3d 568 (S.D.N.Y. 2016) ("Bigsby I").

     With leave of Court, the plaintiffs filed a second amended
complaint, adding three additional plaintiffs – Maria Brandt,

Kathleen Murry, and Herman Grimes — and repleading their RICO claims and adding other claims. The defendant filed another motion to dismiss, and the Court again granted the motion in part and dismissed several of the plaintiffs' claims, including their RICO claims. Bigsby v. Barclays Capital Real Estate, Inc., 298 F. Supp. 3d 708 (S.D.N.Y. 2018) ("Bigsby II"). The plaintiffs then filed a motion for reconsideration with respect to that decision, and the Court held that one of the plaintiffs' claims based on California law should not have been dismissed. See Dkt. No. 147 at 42.

The dust has settled, and the plaintiffs are left with claims for breach of contract, unjust enrichment, conversion, violation of the California Unfair Competition Law ("California UCL"), and violation of § 2924c of the California Civil Code.[1] The defendant has moved for summary judgment dismissing all the plaintiffs' remaining claims, and the plaintiffs have moved to strike certain documents submitted by the defendant in connection with its motion.

**I.**

The standard for granting summary judgment is well established. "The Court shall grant summary judgment if the

---

[1] California Civil Code § 2924c relates to a mortgagor's right to cure a default on a mortgage. The plaintiffs did not plead a violation of the California Civil Code in their second amended complaint.

movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is improper if there is any evidence in the record from

3

any source from which a reasonable inference could be drawn in favor of the nonmoving party. See Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994). If the moving party meets its burden, the nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993).

## II.

The plaintiffs – Lamar Bigsby, Jr., Karla Freeland, Maria Brandt, Kathleen Murry, and Herman Grimes – were mortgagors who each took out loans with various lenders. Def.'s 56.1 Stmt. ¶¶ 3, 20, 41, 54, 66. Bigsby was a resident of Georgia; Freeland was a resident of Massachusetts; and Brandt, Murry, and Grimes were residents of California. Second Am. Compl. ¶¶ 9–13. Each of the plaintiffs' loans, other than Kathleen Murry's, were securitized pursuant to a Pooling and Servicing Agreement, under which another corporation would serve as the trustee.[2] See Def.'s 56.1 Stmt. ¶¶ 3–7, 20–24, 41–45, 54–56, 66–70. Under the Pooling and Servicing Agreements, the plaintiffs' loans were serviced first by HomEq and then by the defendant. Id. All of the

---

[2] The parties have not identified any reason why the fact that Murry's loan was not securitized pursuant to a Pooling and Servicing Agreement would affect the outcome of this motion.

plaintiffs went into default on their mortgage obligations, and the defendant instituted foreclosure proceedings against them. The plaintiffs' claims are based on the defendant's alleged misconduct during those foreclosure proceedings and related bankruptcy proceedings. The plaintiffs argue that the defendant engaged in five discrete, unlawful schemes: the inflated fees scheme, the fee splitting scheme, the post-acceleration late fees scheme, the overcharging scheme, and the improper collection scheme.

## A.

First, to carry out the "inflated fees scheme," the defendant allegedly hired outside counsel for foreclosure and bankruptcy proceedings, either directly or indirectly, through "outsourcers." Bigsby II, 298 F. Supp. 3d at 714; Second Am. Compl. ¶¶ 28–32. The defendant entered into a Master Servicing Agreement with a nonlegal, intermediary entity – often Fidelity National Foreclosure Solutions ("Fidelity") – which provided that the intermediary would serve as the defendant's representative in dealings with the hired outside counsel and be solely responsible for counsel's performance. Bigsby II, 298 F. Supp. 3d at 714. In exchange, the Master Servicing Agreement provided that the defendant would pay the intermediary a fee for each foreclosure and bankruptcy the intermediary monitored, and a continuing fee for each foreclosure (assessed every six

5

months) so long as the mortgagor was "reasonably performing" on a payment plan. Id. These Master Servicing Agreements also set out maximum fees for services related to foreclosure and bankruptcy proceedings. Id.

Pursuant to the Master Servicing Agreements, the intermediary entities also entered into retainer agreements with outside counsel that contained schedules for the fees counsel was permitted to charge the defendant for foreclosure and bankruptcy proceedings. Id. The intermediaries and outside counsel then allegedly charged the defendant for legal fees that were above the maximums set in the Master Servicing Agreements and retainer agreements, and the defendant passed these fees onto the plaintiffs. Id.

The plaintiffs contend that the defendant engaged in this scheme during the foreclosures on the homes of Brandt, Murry, and Grimes, and during Bigsby's bankruptcy. The plaintiffs bring claims of unjust enrichment and conversion against the defendant for allegedly engaging in this scheme.

**B.**

Second, the alleged "fee splitting scheme" is similar to the inflated fees scheme and involves the same fees. The loan documents for the plaintiffs' mortgages were standard forms issued by Fannie Mae and Freddie Mac. Id. These forms permitted the defendant to assess various fees associated with foreclosure

costs against mortgagors in default. Id. Some of the
foreclosure-related fees the defendant assessed against the
plaintiffs were listed as "attorney's fees" or "legal fees" and
were allegedly designed to pass only the cost of foreclosure and
bankruptcy counsel onto defaulting mortgagors. Id. The
plaintiffs allege that the defendant, however, used these
"attorney's fees" or "legal fees" not only to pass onto
mortgagors the cost of counsel but also to pass on the cost of
hiring the nonlegal intermediary to serve as an intermediary
with counsel. Id. The plaintiffs claim that this scheme resulted
in the defendant's collecting legal fees split with a nonlegal
entity. See Second Am. Compl. ¶¶ 42-45. As evidence of this
scheme, the plaintiffs point out that the defendant entered an
indemnity agreement with Fidelity providing that Fidelity would
hold the defendant harmless for "[a]ny allegations that the
business model employed by [Fidelity] . . . constitutes an
impermissible 'fee splitting' or 'referral fee' arrangement."
Bigsby II, 298 F. Supp. 3d at 714 (quoting Second Am. Compl. Ex.
C).

The plaintiffs contend that this scheme affected Brandt,
Murry, Grimes, and Bigsby. They claim that the scheme is
unlawful because the "attorney's fees" the defendant ultimately
collected from the plaintiffs had been split with a nonlegal
intermediary – such as Fidelity – and such fee splitting is

7

illegal. With respect to this scheme, the plaintiffs bring claims of unjust enrichment, conversion, and violation of the California UCL.

### C.

Third, to carry out the alleged "post-acceleration late fees scheme," the defendant allegedly charged plaintiff Grimes four monthly late fees, totaling $208.32, after accelerating his loan. Def.'s 56.1 Stmt. ¶¶ 72-75; Stacy Decl. ¶ 11. Grimes's loan was accelerated on July 30, 2009, a notice of default was recorded on the loan on September 2, 2009, and the defendant collected the four monthly late fees charged to Grimes's account – covering September 2009 through December 2009 – on December 18, 2009. Def.'s 56.1 Stmt. ¶¶ 72-73; Stacy Decl. ¶ 11; see Grobman Decl. Ex. B. The plaintiffs contend that imposing monthly late fees on Grimes after his loan had been accelerated was prohibited by his loan agreement and constitutes a breach of contract. They also contend that the collection of these fees constituted unjust enrichment and conversion.

### D.

Fourth, to carry out the "overcharging scheme," the defendant allegedly charged plaintiffs Murry and Grimes more than what was actually charged by the foreclosure attorneys and trustees that the defendant hired and then "employed suspect accounting transactions" to eliminate any overpayment balances

that the defendant was required to refund. Opp. at 32. That is, rather than refund Murry and Grimes the alleged overcharges of $116.52 and $65 respectively, the defendant zeroed out the overcharges by posting additional suspect transactions to those plaintiffs' accounts after their loans had been paid in full. Id. at 32-37.

### E.

Finally, to carry out the "improper collection scheme," the defendant allegedly collected costs charged to the California-resident plaintiffs – Grimes, Murry, and Brandt – that were prohibited by California Civil Code § 2924c. See Opp. at 38-40.

\*        \*        \*

In sum, the plaintiffs' claims are alleged as follows.

| Scheme | Claim or Vehicle | Plaintiff |
|---|---|---|
| Inflated Fees | – Unjust Enrichment<br>– Conversion | – Grimes<br>– Murry<br>– Brandt<br>– Bigsby |
| Fee Splitting | – Unjust Enrichment<br>– Conversion<br>– Cal. UCL | – Grimes<br>– Murry<br>– Brandt<br>– Bigsby |
| Post-Acceleration Late Fees | – Breach of Contract<br>– Unjust Enrichment<br>– Conversion | – Grimes |
| Overcharging | – Not Stated | – Grimes<br>– Murry |
| Improper Collection | – Cal. Civ. Code<br>§ 2924c | – Grimes<br>– Murry<br>– Brandt |

The plaintiffs have not attempted to defend any claims asserted by Karla Freeland and concede that those claims should be dismissed. Accordingly, the defendant's motion for summary judgment dismissing Freeland's claims is **granted.**

### III.

The plaintiffs raised neither the overcharging scheme nor the improper collection scheme in their second amended complaint. These claims, raised for the first time in the plaintiffs' opposition to this summary judgment motion, are therefore not considered. Greenidge v. Allstate Ins. Co., 446 F.3d 356, 361 (2d Cir. 2006); see Lyman v. CSX Transp., Inc., 364 F. App'x 699, 701 (2d Cir. 2010) (collecting cases).[3]

### IV.

The defendant contends that the plaintiffs' quasi-contract claims related to the "inflated fees scheme" fail because, among other reasons: (1) there can be no quasi-contract claims because the subject matter of the plaintiffs' claims is governed by

---

[3] While the plaintiffs recounted in the second amended complaint the various fees paid by Murry and Grimes, absent from that complaint is the claim that Murry and Grimes were overcharged for fees that the defendant never actually paid. Rather, the fees paid by Murry and Grimes were detailed as part of the other schemes, such as the failure to advise those plaintiffs that amounts were shared with Fidelity and allegedly constituted fee splitting, or were in excess of amounts that the defendant could be charged under the Master Servicing Agreement with Fidelity. See Second Am. Compl. ¶¶ 236-37, 256-57. The alleged overcharging scheme was not part of the schemes pleaded by the plaintiffs for which they claimed to represent a class. See id. ¶ 19. Therefore, the second amended complaint does not allege properly claims based on overcharging or improper collection as described above and cannot be asserted in opposition to a motion for summary judgment.

their loan agreements, to which the defendant is not a party; (2) there is no evidence that the defendant kept any portion of the allegedly excessive fees and therefore the defendant was not unjustly enriched; and (3) there is no claim for conversion because conversion requires a taking of specific property rather than money. The defendant's arguments are persuasive.

**A.**

The plaintiffs argue that the allegedly inflated attorney's fees charged to their accounts were improper. The plaintiffs contend that the defendant charged them attorney's fees that were in excess of the fees that were required by the agreements the defendant reached with the intermediaries and law firms. The defendant points out, and the plaintiffs do not dispute, that the plaintiffs' obligation to reimburse attorney's fees was governed by the plaintiffs' loan agreements. The defendant was not a signatory to the plaintiffs' loan agreements but rather serviced the loans and was entitled to collect and retain various fees that the lenders could charge under the agreements. See, e.g., Turner Decl. Ex. 60 § 3.21. The defendant contends that it cannot be sued in quasi-contract for claims properly brought against the lenders with whom the plaintiffs contracted.

"[I]t is well settled that an action based on . . . quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." Lance

Camper Mfg. Corp. v. Republic Indem. Co., 51 Cal. Rptr. 2d 622,

628 (Ct. App. 1996); see Valley Proteins, Inc. v. Hulsey Envtl.

Servs., Inc, No. 13cv93, 2014 WL 12480024, at *8 (N.D. Ga. Dec.

23, 2014). The plaintiffs argue that this principle does not

apply in this case because there is no agreement "between the

parties" – that is, although the loan agreements might preclude

quasi-contract claims by the plaintiffs against the lenders, the

agreements allegedly do not preclude such claims against the

defendant as a nonsignatory to these loan agreements. The

plaintiffs point to no case under California or Georgia law in

support of their position[4] and at least one California Court of

Appeal has held otherwise. See Cal. Med. Ass'n, Inc. v. Aetna

U.S. Healthcare of Cal., Inc., 114 Cal. Rptr. 2d 109, 125–26

(Ct. App. 2001);[5] cf. Law Debenture v. Maverick Tube Corp., No.

06cv14320, 2008 WL 4615896, at *12 (S.D.N.Y. Oct. 15, 2008)

---

[4] The only case the plaintiffs cite in direct support of their argument, Cannon v. Wells Fargo Bank N.A., 917 F. Supp. 2d 1025, 1052–53 (N.D. Cal. 2013), applies Florida law.

[5] In California Medical Association, the plaintiff – the assignee of claims owned by various physicians – raised a quasi-contract claim against the defendants related to compensation allegedly owed to the physicians under contracts associated with healthcare service plans the defendants operated. 114 Cal. Rptr. 2d at 113. The defendants were not parties to one set of contracts under which the physicians were allegedly owed money – the "Intermediary-Physician Agreements." Id. Rather, that set of contracts was comprised of contracts between the physicians and intermediaries with whom the defendant had contracted to perform various tasks. Id. Nonetheless, the court held that the plaintiff "may not proceed on its quasi-contract claim because the subject matter of such claim, to wit, whether Physicians were entitled to compensation from defendants, was governed by express contracts including . . . the Intermediary-Physician Agreements." Id. at 126.

(collecting cases holding that, under New York law, "the existence of a valid and binding contract governing the subject matter at issue in a particular case <u>does</u> act to preclude a claim for unjust enrichment even against a third party non-signatory to the agreement"), <u>aff'd sub nom.</u> <u>Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.</u>, 595 F.3d 458 (2d Cir. 2010).

The plaintiffs' loan agreements govern the subject matter of the plaintiffs' quasi-contract claims related to the inflated fees scheme. These claims should be brought against the lenders who are parties to the agreements. The plaintiffs' quasi-contract claims against the defendant therefore fail. <u>Cf.</u> <u>Hanover Ins. Co. v. Hermosa Const. Grp., LLC</u>, 57 F. Supp. 3d 1389, 1398 (N.D. Ga. 2014) (dismissing an unjust enrichment claim where the plaintiff "failed to allege that an adequate remedy at law does not exist"); <u>In re Facebook PPC Advert. Litig.</u>, 709 F. Supp. 2d 762, 770 (N.D. Cal. 2010) ("[T]he remedy for unjust enrichment applies only in the absence of an adequate remedy at law.").

### B.

Moreover, the plaintiffs' unjust enrichment claim fails because the plaintiffs have not made the necessary showing that the defendant benefited unjustly at the plaintiffs' expense.[6] The

---

[6] <u>See</u> <u>MH Pillars Ltd. v. Realini</u>, 277 F. Supp. 1077, 1094 (N.D. Cal. 2017) ("The elements of a claim of quasi-contract or unjust enrichment are (1) a defendant's receipt of a benefit and (2) unjust retention of that

plaintiffs have presented no evidence that the defendant retained fees from the plaintiffs in excess of the fees that the defendant actually paid out to the intermediaries or retained counsel. When the defendant engaged with outside counsel, and with the nonlegal intermediaries to represent the defendant in any dealings with outside counsel, it did so on behalf of the owner of the underlying loans. Thus, the attorney's fees allegedly charged in excess of the Master Servicing Agreements between the defendant and the nonlegal intermediaries, or the retainer agreements between outside counsel and the intermediaries, did not ultimately benefit the defendant. Rather, the defendant advanced the attorney's fees on the loan owner's behalf and was entitled to reimbursement of those fees — either from the plaintiffs or, if they did not pay, from the proceeds of liquidating the plaintiffs' loans. See, e.g., Turner Decl. Ex. 59 at 56-57, § 3.15; Ex. 60 at 33-34, § 3.15. The plaintiffs do not allege that the fees they paid the defendant were for an amount beyond the amount the defendant advanced. And in any event, funds collected beyond the advanced amounts would be the property of the loan owner. See, e.g., Turner Decl. Ex. 59 § 3.20; Ex. 60 § 3.20. There is no evidence that the

_____

benefit at the plaintiff's expense."); Brooks v. Branch Banking & Tr. Co., 107 F. Supp. 3d 1290, 1298 (N.D. Ga. 2015) ("To prevail on a claim for unjust enrichment, a plaintiff thus must ultimately prove (1) that it conferred a benefit on the defendant and (2) that equity requires the defendant to compensate for that benefit." (quotation marks omitted)).

defendant, as a loan servicer, benefitted from the inflated fees scheme alleged by the plaintiffs.

The plaintiffs contend that their payments nonetheless benefited the defendant because the payments fulfilled the defendant's debts – namely, the advanced funds – saving the defendant from expense or loss. The plaintiffs do not specify the particular type of expense or loss from which the defendant was saved. See Second Am. Compl. ¶¶ 317–21. Moreover, the two cases the plaintiffs cite in support of their argument are distinguishable. In Manufacturers Hanover Trust Co. v. Chemical Bank, the defendant used funds transferred to it mistakenly to reduce its losses on a customer's overdraft. 559 N.Y.S.2d 704, 712 (App. Div. 1990). And in County of Solano v. Vallejo Redevelopment Agency, one defendant agreed to pay the plaintiff for capital improvements in a certain neighborhood but then used the funds earmarked for this purpose to pay off unrelated bonds issued by the other defendant, unjustly enriching the other defendant. 90 Cal. Rptr. 2d 41, 52–54 (Ct. App. 1999).[7]

In this case, while the plaintiffs allege that the defendant charged amounts for attorney's fees that were in

---

[7] Unlike the current case, it was plain in County of Solano that the defendant who received the funds benefited at the expense of the plaintiff who was owed the funds. The court also found that the defendant redevelopment agency breached its contract with the plaintiff county by diverting funds to pay off bonds issued by another county. There is no discussion of the issue of whether the existence of a breach of contract claim should foreclose an unjust enrichment claim against a nonparty to the contract.

excess of the amounts required under various agreements with the intermediaries and attorneys, there is no evidence that the defendant was reimbursed for more funds than it advanced. Reimbursement did not save the defendant any identified expense or loss, and indeed the funds were advanced on behalf of the loan owners. There is also no evidence that the defendant retained any benefit, and therefore the defendant was not unjustly enriched. Cf. Martin v. Litton Loan Servicing LP, No. 12cv970, 2014 WL 977507, at *13 (E.D. Cal. Mar. 12, 2014) ("[The plaintiff] cannot state a claim for unjust enrichment against defendants when the payments that were collected were used for their intended purpose - to pay down the amount owed under the loan - and they did not keep the money for themselves."), report and recommendation adopted, No. 12cv970, 2014 WL 1309199 (E.D. Cal. Mar. 28, 2014); Mertan v. Am. Home Mortg. Servicing, Inc., No. SACV09-723, 2009 WL 3296698, at *10 (C.D. Cal. Oct. 13, 2009) (dismissing an unjust enrichment claim where the defendant "did not retain the loan payments but merely collected them on behalf of the lender").

## c.

The plaintiffs' conversion claim also fails. "To state a conversion claim under Georgia law, the party alleging conversion must show that the defendant refused to return the property or actually converted the property by [a]ny distinct

16

act of dominion and control wrongfully asserted over another's personal property, in denial of . . . or inconsistent with its right of ownership." Blackburn v. BAC Home Loans Servicing, LP, 914 F. Supp. 2d 1316, 1325 (M.D. Ga. 2012) (quotation marks omitted, alterations in original). To state a conversion claim under California law, "a plaintiff must allege that (1) he had ownership or rights to possess the property at issue at the time of the conversion; (2) the defendant converted the property by wrongful act; and (3) the plaintiff suffered damages as a result." Sims v. AT & T Mobility Servs. LLC, 955 F. Supp. 2d 1110, 1118 (E.D. Cal. 2013). The defendant argues persuasively that mere overcharges do not support a conversion claim and the monetary charges at issue are not the type of "property" that can support a conversion claim.

"A cause of action for conversion of money can be stated only where a defendant interferes with the plaintiff's possessory interest in a specific, identifiable sum, such as when a trustee or agent misappropriates the money entrusted to him." Kim v. Westmoore Partners, Inc., 133 Cal. Rptr. 3d 774, 789 (Ct. App. 2011). Thus, "[m]oney cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment." Id.; see Branch v. All. Syndicate, Inc., 469 S.E.2d 807, 809

(Ga. Ct. App. 1996) (stating that a conversion claim for the recovery of money is cognizable "where the allegedly converted money is specific and identifiable such as insurance premiums earmarked for remittance to the insurer"). Based on this principle, "claims arising out of an alleged simple overcharge cannot be the basis for a conversion claim." Worldwide Travel, Inc. v. Travelmate US, Inc., No. 14cv155, 2015 WL 1013704, at *9 (S.D. Cal. Mar. 9, 2015).

The allegedly inflated fees of which the plaintiffs complain "do not represent a specific, identifiable amount of money owned by them or 'earmarked' for a particular purpose, which appellees have appropriated for themselves." Park Place Cafe, Inc. v. Metro. Life Ins. Co., 563 S.E.2d 463, 467 (Ga. Ct. App. 2002) (affirming summary judgment dismissing a conversion claim related to alleged overcharges for electricity in the plaintiffs' lease bills). The plaintiffs' conversion claim is tantamount to a complaint about overcharges and therefore fails.

**V.**

The plaintiffs bring claims for unjust enrichment, conversion, and violation of the California UCL with respect to the defendant's alleged "fee splitting scheme." This scheme involves the same fees as the inflated fees scheme. Thus, the plaintiffs' unjust enrichment and conversion claims against the

defendant fail for the same reasons explained above. Their claim brought under the California UCL is also unsuccessful.

The California UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The statute thus creates "three separate types of unfair competition": "practices that are either unfair, or unlawful, or fraudulent." Pastoria v. Nationwide Ins., 6 Cal. Rptr. 3d 148, 153 (Ct. App. 2003) (quotation marks omitted). The California legislature used "sweeping language" in the UCL that it intended "to include 'anything that can properly be called a business practice and that at the same time is forbidden by law.'" Id. (quoting Bank of the W. v. Superior Court, 833 P.2d 545, 553 (Cal. 1992)). To establish UCL claims under the statute's "unlawful" prong, the plaintiffs must show that the defendant violated case law or an independent statute or regulation. See, e.g., id. (holding that violations of the California Insurance Code constituted unlawful conduct under the UCL). A violation of the California Rules of Professional Conduct can constitute unlawful conduct for purposes of the UCL, irrespective of whether the defendant is a member of the California State bar. See People ex rel. Herrera v. Stender, 152 Cal. Rptr. 3d 16, 32–34 (Ct. App. 2012).

The plaintiffs contend that in carrying out the fee splitting scheme, the defendant collected attorney's fees that

19

had been split with the nonlegal intermediaries who represented the defendant in dealings with foreclosure and bankruptcy counsel in violation of California Rule of Professional Conduct 1-320.[8] Rule 1-320 generally prohibits lawyers from "shar[ing] legal fees with a person who is not a lawyer."[9] The plaintiffs allege that, in violation of this rule, foreclosure and bankruptcy counsel would provide a portion of the fee they received to the nonlegal intermediary, and that their fee was ultimately collected by the defendant. The defendant maintains that this arrangement does not result in legal fees being split because the portion of the payment given to the intermediary was for administrative services; the intermediary did not receive any fees characterizable as "legal fees," and thus the defendant did not collect any unlawfully split fees.

The plaintiffs rely heavily on McIntosh v. Mills, 17 Cal. Rptr. 3d 66 (Ct. App. 2004). In McIntosh, an attorney and a nonattorney agreed that the nonattorney would assist the attorney in two actions brought against a bank, and that the

---

[8] The plaintiffs also claim that such fee splitting violated Rule 5.4 of the Georgia Rules of Professional Conduct. They do not provide any authority stating that a violation of Georgia's Rules of Professional Conduct constitutes "unlawful conduct" under California's UCL. In any event, for the same reasons explained below with respect to the California Rules of Professional Conduct, the defendant's alleged conduct does not violate Georgia's Rules.

[9] A new version of the California Rules of Professional Conduct went into effect on November 1, 2018. The updated version of this rule is now codified as Rule 5.4.

nonattorney would receive 15 percent of any attorney's fees that the attorney received from the two actions. Id. at 68. The court held that this agreement violated Rule 1-320. Id. at 75. The plaintiffs also cite Bertelsen v. Harris, which similarly involved an attorney agreeing to split a contingency fee with a nonattorney. 537 F.3d 1047 (9th Cir. 2008). However, the court held that disgorgement of the attorney's fees was not appropriate because the fees were reasonable for the result achieved.[10] Id. at 1049.

In this case, there are no agreements between outside counsel and the intermediaries comparable to those in McIntosh and Bertelsen. The plaintiffs provide no evidence that the intermediaries collected money for anything other than nonlegal, administrative fees pursuant to the relevant agreements. Nor do the plaintiffs provide any authority suggesting that paying such administrative fees violates Rule 1-320.[11] Moreover, the plaintiffs do not explain how the defendant's collection of the allegedly unlawful fees violates Rule 1-320.[12] See Miller v.

_____

[10] Indeed, the plaintiffs cite the dissent, which was construing the Washington Rules of Professional Conduct. See 537 F.3d at 1061 (Smith, Jr., J., dissenting). Moreover, in Bertelsen, there was "nothing in the record" indicating that the portion of the fee split with the nonattorney "corresponded with work that was nonlegal in nature." Id.

[11] In a related case, the plaintiffs failed to prove after trial that fees paid to Fidelity for administrative services constituted fees that were prohibited by law. See Mazzei v. Money Store, 308 F.R.D. 92, 103 (S.D.N.Y. 2015), aff'd, 829 F.3d 260 (2d Cir. 2016).

[12] To the extent the plaintiffs contend that the defendant's conduct is unlawful because the defendant collected fees listed as "attorney's fees" or

21

Wolpoff & Abramson, L.L.P., 321 F.3d 292, 295-96 (2d Cir. 2003)
(Sotomayor, J.) ("[T]he underlying . . . agreement permitted the
collection of attorneys' fees and . . . the fact that [counsel]
later may have intended to share those fees with a non-lawyer
does not render the attempt to collect such fees illegal, even
if that act of sharing might violate New York professional
ethics rules."). Therefore, the plaintiffs' California UCL claim
fails.

## VI.

The plaintiffs next argue that, through the "post-
acceleration late fees scheme," the defendant committed breach
of contract, conversion, and was unjustly enriched by charging
plaintiff Grimes four monthly late fees after accelerating his
loan, which was in alleged violation of Grimes's loan agreement.
The defendant responds that, among other things, (1) the
relevant contract was between Grimes and the loan owner, and
therefore the defendant could not have breached that contract;
(2) the plaintiffs' claims are time-barred; and (3) the
plaintiffs' quasi-contract claims fail because the subject
matter of those claims is covered by Grimes's loan agreement, to

---

"legal fees" that also included administrative fees, the plaintiffs do not
state a claim against the defendant. Any alleged mislabeled fees are tied to
the plaintiffs' loan agreements, which set out the fees for which the
plaintiffs can be charged. The defendant is not a party to the plaintiffs'
loan agreements. Thus, for the same reasons discussed with respect to the
plaintiffs' claims under the "inflated fees scheme," a claim against the
defendant related to this alleged mislabeling fails.

which the defendant is not a party. The defendant's arguments are compelling.

**A.**

It is undisputed that the provisions relevant to Grimes's breach of contract claim are in his contract with the loan owner, not the defendant. The plaintiffs claim that, nonetheless, Grimes can bring a breach of contract claim against the defendant loan servicer because the defendant was assigned the right to retain any late fees collected from Grimes. The defendant contends that it was not "assigned" any rights in the operative contract; the contract merely set forth how the defendant would be paid for its work as a loan servicer.

In support of their argument, the plaintiffs cite <u>In re Ocwen Loan Servicing, LLC</u>, in which the court stated:

> the mortgagee in this case assigned some of the rights created by the mortgage contract – the "servicing rights" – to [the defendant], which according to the complaint proceeded to violate its contractual obligations. It is no different than if the original mortgagee, or an assignee of the entire mortgage, had violated the terms of the mortgage or defrauded the mortgagor. . . . If an original mortgagee can be sued under state law for breach of contract, so may the partial assignee if he violates the terms of the part of the mortgage contract that has been assigned to him.

491 F.3d 638, 645 (7th Cir. 2007). But the plaintiffs do not point to any provision in the operative contract, or any other evidence, indicating that the defendant is a partial assignee. They instead infer such an assignment from the provision setting

out how the defendant, as a loan servicer, is to be compensated. See Turner Decl. Ex. 60 § 3.21. However, nothing in this provision suggests that the loan owner assigned any part of its contractual rights, vis-à-vis Grimes, to the defendant. And, to the contrary, the contract states elsewhere that the defendant is to take various actions "for and on behalf of" the loan owner rather than for itself as an assignee. See id. §§ 3.01, 3.20. This case is thus distinguishable from Ocwen.

The plaintiffs' citation to California Civil Code § 1589 fares no better. That provisions states, "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting." Cal. Civ. Code § 1589. Section 1589 generally applies only when the entity accepting the benefit was a party to the original transaction, but there is an exception where "the assignee" of an executory contract accepts all the benefits of the contract. Recorded Picture Co. v. Nelson Entm't, Inc., 61 Cal. Rptr. 2d 742, 748 (Ct. App. 1997). Here, the defendant was not assigned any portion of the relevant contract and assuredly not all the benefits.[13]

---

[13] The plaintiffs also cite Hearn Pacific Corp. v. Second Generation Roofing, Inc., which similarly holds that "an assignee's voluntary acceptance of the benefits of a contract may obligate the assignee to assume its obligations as a matter of law." 201 Cal. Rptr. 3d 806, 822 (Ct. App. 2016) (emphases added). Finally, the plaintiffs cite California Civil Code § 3521,

24

Moreover, "[j]udges around the country . . . have held that a loan servicer, as a lender's agent, has no contractual relationship or privity with the borrower and therefore cannot be sued for breach of contract." Edwards v. Ocwen Loan Servicing, LLC, 24 F. Supp. 3d 21, 28 (D.D.C. 2014) (collecting cases); see Conder v. Home Sav. of Am., 680 F. Supp. 2d 1168, 1174 (C.D. Cal. 2010) (same); Mertain v. Am. Home Mortg. Servicing, Inc., No. SACV09-723, 2010 WL 11507563, at *7 (C.D. Cal. Mar. 1, 2010) (same).[14]

Because there is no evidence that the defendant is an assignee of, or otherwise in privity with, the loan owner, the plaintiffs may not sue the defendant for breaching a contract between Grimes and the loan owner. Furthermore, because the contract between Grimes and the loan owner covers the subject matter of the plaintiffs' quasi-contract claims for post-acceleration late fees, those claims fail for the same reason that the plaintiffs' other quasi-contract claims fail.

**B.**

Moreover, Grimes's breach of contract claim is time-barred. The plaintiffs filed this action on March 8, 2014, and Grimes

---

which states simply, "He who takes the benefit must bear the burden." They make no effort to explain why this provision allows a breach of contract claim against the defendant.

[14] This Court decertified a class of borrowers who asserted a "post-acceleration late fees" claim against a loan servicer because the plaintiff had failed to prove that the class members were in privity with the loan servicer defendant. See Mazzei, 308 F.R.D. at 109–12.

was added as a plaintiff on May 4, 2017. Grimes paid the late fees on December 18, 2009. A four-year statute of limitations applies to Grimes's breach of contract claim. See Bigsby II, 298 F. Supp. 3d at 725–26. The statute expired by the end of 2013.

The California statute of limitations for a breach of contract claim generally begins to run at the time of breach. Church v. Jamison, 50 Cal. Rptr. 3d 166, 176 (Ct. App. 2006); Cochran v. Cochran, 66 Cal. Rptr. 2d 337, 340 (Ct. App. 1997); see Aryeh v. Canon Bus. Sols., Inc., 292 P.3d 871, 875 (Cal. 2013) ("[O]rdinarily, the statute of limitations runs from the occurrence of the last element essential to the cause of action." (quotation marks omitted)). Where applicable, the "discovery rule" postpones accrual of a cause of action until the plaintiff either discovers or has reason to discover the cause of action. Aryeh, 292 P.3d at 875. But the discovery rule does not apply in a typical breach of contract case. El Pollo Loco, Inc. v. Hashim, 316 F.3d 1032, 1039 (9th Cir. 2003). Rather,

> the discovery rule applies to unique breach of contract cases when: 1) [t]he injury or the act causing the injury, or both, have been difficult for the plaintiff to detect; 2) the defendant has been in a far superior position to comprehend the act and the injury; or 3) the defendant had reason to believe the plaintiff remained ignorant [that] he had been wronged.

Id. (quotation marks omitted, alterations in original). Breach
of contract claims involving fraud or misrepresentation also may
benefit from the discovery rule. Id. at 1039-40.

All of the plaintiffs' claims based on fraud have been
dismissed throughout this lawsuit, and the plaintiffs do not
offer any other specific reason why the discovery rule applies
to Grimes's claim. The plaintiffs only state generally that the
defendant has "not even attempted" to argue that there were
facts available to Grimes that should have made him aware that
the defendant was collecting improper late fees. Opp. at 44. But
the evidence shows that Grimes entered a contract with the loan
owner, his loan was accelerated, he was subsequently charged
late fees, and he paid those fees on December 18, 2009. See
Def.'s 56.1 Stmt. ¶¶ 66-68, 72-73; Stacy Decl. ¶ 11; Grobman
Decl. Ex. B; Turner Decl. Ex. 60. Thus, Grimes knew or should
have known each fact essential to his claim by the time he paid
the late fees. The plaintiffs have put forth no evidence
suggesting otherwise.

The plaintiffs contend that the statute of limitations was
equitably tolled starting in November 2008, when a similar case,
Kline v. Mortgage Electronic Registration Systems, Inc., No.
3:08cv408, was filed in the Southern District of Ohio. See
Second Am. Compl. ¶¶ 146, 261. California law permits equitable
tolling during the pendency of a prior putative class action

involving claims similar to those brought in a subsequent class action suit. Hatfield v. Halifax PLC, 564 F.3d 1177, 1188-89 (9th Cir. 2009). But "a plaintiff who wishes to benefit from equitable tolling must have actually relied on the use of some other legal mechanism to vindicate his rights." Hendrix v. Novartis Pharm. Corp., 975 F. Supp. 2d 1100, 1114 (C.D. Cal. 2013), aff'd, 647 F. App'x 749 (9th Cir. 2016). Equitable tolling therefore applies where a plaintiff delays filing suit "because of" the pendency of the related proceeding. Id.

The plaintiffs do not contend that Grimes had notice of the Kline suit, much less that Grimes delayed bringing his own suit because of the pending action. Indeed, the plaintiffs do not dispute that Grimes first contemplated bringing suit in 2016 (after the statute of limitations had expired) when he was contacted by counsel and told that he might have claims against the defendant. See Def.'s 56.1 Stmt. ¶¶ 78-79. Moreover, the plaintiffs could not possibly claim that the discovery rule applies. They argue inconsistently that there is no evidence that Grimes should have known about his cause of action but at the same time argue that Grimes was aware of his cause of action and delayed bringing it because of the Kline case. The equitable tolling doctrine therefore does not save Grimes's time-barred breach of contract claim.

In short, no equitable exception applies to the four-year statute of limitations that governs Grimes's breach of contract claim. The statute of limitations began to run on December 18, 2009, and the plaintiffs filed suit on March 8, 2014 and added Grimes to the suit on May 4, 2017. Grimes's breach of contract claim regarding the alleged post-acceleration late fees scheme is time-barred. Moreover, under California law the statutes of limitations for unjust enrichment and conversion claims are shorter than for breach of contract claims. See Fed. Deposit Ins. Corp. v. Dintino, 84 Cal. Rptr. 3d 38, 50 (Ct. App. 2008) (noting that unjust enrichment claims generally have a three-year statute of limitations); AmerUS Life Ins. Co. v. Bank of Am., N.A., 49 Cal. Rptr. 3d 493, 499 (Ct. App. 2006) (noting that conversion claims have a three-year statute of limitations). And there is no reason why an equitable exception would toll the limitations periods of Grimes's quasi-contract claims but not his breach of contract claim. Thus, Grimes's quasi-contract claims relating to the alleged post-acceleration late fees scheme are also time-barred.

*      *      *

All of the plaintiffs' claims, with respect to each the schemes allegedly carried out by the defendant, fail for the reasons explained above. The defendant's motion for summary judgment dismissing the plaintiffs' claims is **granted.**

## VII.

After the parties finished briefing this motion for summary judgment, the plaintiffs moved to strike (1) Karen L. Stacy's supplemental declaration; (2) any facts alleged, or arguments made, for the first time in the defendant's reply brief; and (3) a "check log" purporting to show that the defendant refunded the post-acceleration late fees charged to plaintiff Grimes. The plaintiffs' motion to strike appears primarily to be an effort to get the last word.

In any event, none of the materials that the plaintiffs move to strike influenced this Court's decision. Stacy's supplemental declaration does not add to the arguments made elsewhere in the papers that the Court finds persuasive. And the check log need not be considered because the claim to which it is relevant – Grimes's breach of contract claim regarding post-acceleration late fees – is time-barred. That claim also fails on another ground, namely, that the defendant is not a party to the relevant agreement. Finally, the arguments made in the defendant's reply brief were plainly arguments made in response to the plaintiffs' opposition papers, not new arguments. Moreover, the Court did not rely on the arguments to which the plaintiffs' object. The plaintiffs' motion to strike is therefore **denied.**

## CONCLUSION

The Court has considered all the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, the defendant's motion for summary judgment is **granted,** and the plaintiffs' motion to strike is **denied.** The Clerk is directed to enter judgment dismissing this case. The Clerk is also directed to close all pending motions and to close this case.

**SO ORDERED.**

Dated:     **New York, New York**
           **July 20, 2019**

                                   **John G. Koeltl**
                      **United States District Judge**